IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARRETT KOEHLER, as an individual and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>   v.<br><br>LITEHOUSE, INC.,<br><br>    Defendant.<br>_____/ | No. CV 12-04055 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND GRANTING DEFENDANT'S MOTION TO STRIKE** |

Currently before the Court are defendant's motion to dismiss plaintiff's first amended complaint and defendant's motion to strike plaintiff's expert report. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for disposition without oral argument and therefore VACATES the hearing currently scheduled for December 14, 2012. Having carefully considered the papers submitted, the Court GRANTS IN PART and DENIES IN PART defendant's motion to dismiss and GRANTS defendant's motion to strike, for the reasons set forth below.

**BACKGROUND**

On August 21, 2012, plaintiff Koehler filed a complaint against defendant Litehouse, Inc. After Litehouse filed a motion to dismiss the complaint, Koehler filed his first amended complaint. Subsequently, Litehouse withdrew its first motion to dismiss, and filed a new motion to dismiss the first amended complaint.

Koehler alleges that Litehouse manufactures and sells a salad dressing known as "Bleu Cheese Yogurt Dressing with Probiotics" (the "Product"). FAC ¶ 4. Koehler purchased the Product from a

Safeway supermarket in San Francisco, California for approximately $3.00. FAC ¶ 11. The front label of the Product claims that it "May boost immunity" and the rear label of the product claims that it "May enhance the body's immune system" (collectively the "Statements"). *Id.* Koehler alleges that he materially relied on these statements when he purchased the product. FAC ¶¶ 12-13.

Koehler argues that the Statements are "false, misleading, and likely to deceive a reasonable consumer." FAC ¶ 26. Koehler has brought a putative class action against Litehouse, asserting claims under: (1) California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200 *et seq.*; (2) California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500 *et seq.*; (3) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; (4) and for breach of express warranty and (5) negligent misrepresentation.

## LEGAL STANDARD

### 1. Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), the court may strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

Under Federal Rule of Civil Procedure 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." A "written instrument" under Rule 10(c) "'is a document evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement.'" *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1220 (S.D. Cal. 2001) (quoting *Murphy v. Cadillac Rubber & Plastics, Inc.*, 946 F. Supp. 1108, 1115 (W.D.N.Y. 1996) (citing BLACK'S LAW DICTIONARY 801, 1612 (6th ed.1990))). In contrast, "[a]ffidavits and declarations . . . are not allowed as pleading exhibits unless they form the basis of the complaint." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also id.* (striking expert affidavit attached to complaint).

**2.     Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility " standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 544, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.* at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

In deciding whether the plaintiff has stated a claim, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In considering a motion to dismiss, the court may take judicial notice of matters of public record outside the pleadings. *See MGIC Indemn. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). Dismissal of a *pro se* complaint without leave to amend is proper only if it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (quoting *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)).

**DISCUSSION**

**1. Defendant's Motion to Strike**

In Koehler's initial complaint, he attached the affidavit of his retained expert Dr. Kent Carson ("Expert Report"). Compl., Ex. 1. When he amended his complaint, he declined to attach the Expert Report, but quoted from it in the body of the complaint. FAC ¶¶ 31, 32. Litehouse argues that the Expert Report and all references to the Expert Report should be stricken from the complaint because it is not a "written instrument" as required by Federal Rule of Civil Procedure 10(c). Def.'s Mot. to Strike 3.

Koehler argues that Litehouse's argument that the Expert Report should be stricken from the amended complaint is moot because the Expert Report is no longer attached to the amended complaint. The Court agrees. Koehler further argues that Rule 10(c) only governs attached exhibits, and therefore, the references should not be stricken. The Court disagrees.

The Ninth Circuit has explained that under Rule 10(c), "[e]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908. In *De Marco*, the court declined to strike the expert's "nonconclusory assertions," even through it struck the attached exhibit. 149 F. Supp. 2d at 1222. Here, the Court finds that the quotations are conclusory assertions: "Dr. Carson opined . . . ," FAC ¶ 31, and "Dr. Carson also stated . . . I conclude . . . ," FAC ¶ 32. The quotes from the Expert Report relay Dr. Carson's expert opinion, but makes no statements of fact.

Therefore, the Court GRANTS defendant's motion to strike the references to Dr. Carson's Expert Report.

**2. Defendant's Motion to Dismiss**

**A. The Meaning of "May"**

Litehouse argues that all of Koehler's claims fail as a matter of law because of the qualifier "may" that precedes the Statements. *See* Def.'s Mot. to Dismiss 2-3. It argues that Koehler's claims are based on the incorrect premise that the Statements claim that the Product "would" enhance the

4

immune system, when instead it only claims it "may" enhance the immune system. *See id*; FAC ¶¶ 11, 38.

To state a valid false advertising claim under the UCL, FAL, and CLRA, the plaintiff must show that the "reasonable consumer" is "likely to be deceived" by the advertisement. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (quotations and citations omitted). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). To determine whether a reasonable consumer is likely to be deceived, the statement must be read in context of the entire advertisement. *Freeman*, 68 F.3d at 290 (affirming the dismissal because although the mailer in large type stated that plaintiff won the sweepstakes, the small type stated that he would win if only if he returned the winning prize number).

Courts have held that qualifying statements are important determine a consumer's understanding. In *Maloney v. Verizon Internet Services, Inc.*, plaintiff argued that Verizon's advertisement of an internet service with speeds "up to 3 Mbps" was misleading because Verizon knew that the plaintiff would not be able to reach 3 Mbps. ED CV 08-1885, 2009 WL 8129871, at *1 (C.D. Cal. Oct. 4, 2009) *aff'd*, 413 F. App'x 997 (9th Cir. 2011). The district court dismissed the claims because it found that the advertisement "was not likely to deceive a reasonable customer [because the] 'up to' language should have put any reasonable customer on notice that his or her own speed may not reach 3 Mbps." *Id.* at *5.

In the instant case, the qualifying term "may" in the Statements functions in a similar manner to the qualifier "up to." "May" in this context indicates a possibility or probability that an event will occur. *See* MERRIAM WEBSTER, *may*, at http://www.merriam-webster.com/dictionary/may; BLACK'S LAW DICTIONARY 1068 (9th ed. 2009); RJN, Ex. B[1]. In this case, reasonable consumers would likely understand that if the Product claims it "May boost immunity" and "May enhance the body's immune system," there exists only a possibility or a probability that it will boost their immunity or enhance their

---

[1] Litehouse moved for the Court to take judicial notice of the Oxford English Dictionary definition of "may." While this and other dictionary definitions are informative, the Court declines to use a single dictionary to define "may," and finds that a reasonable consumer's understanding is informed both by the meaning of the word and the context of the entire advertisement.

body's immune system. The qualifier "may" does not mean that a reasonable consumer would understand that the Product is *certain* to fulfill its claims. To the extent that Koehler's claims are predicated on idea that a reasonable consumer would understand that the Product *will* or *must* boost their immunity, they must be dismissed.[2]

However, portions of Koehler's first amended complaint seem predicated on the idea that a consumer will reasonably understand the Statement to mean that there is a possibility that the Product will enhance the immune system or boost immunity, but he alleges that they were still misled because the Product does not enhance the immune system or boost immunity for any consumers. *See* FAC ¶ 29 ("Litehouse's claims that the Product "may" boost immunity and enhance the body's immune system is a false and unfair deception because Litehouse knows the Product does not provide the immune boosting qualities that it purports to offer."). This type of claim differs from the claim in *Maloney*. In *Maloney*, the plaintiff did not allege that consumers would *never* reach internet speeds of 3 Mbps. If in *Maloney*, no customer's internet ever reached 3 Mbps, then the advertisement would have been false. Koehler alleges that "[i]nclusion of the word 'may' when describing the purported immunity boosting benefits offered by the Product, leads a reasonable consumer to believe that the Product will, or a [*sic*] minimum has a likelihood and/or tendency to boost and enhance the body's immune system. Because the Product *does not boost immunity or enhance the body's immune system*, Litehouse's advertising is patently false." FAC ¶ 33 (emphasis supplied). The Court finds that, in light of these allegations, plaintiff has stated a claim for misleading advertising under the UCL, FAL, and CLRA. Because Litehouse's arguments for dismissal of Koehler's negligent misrepresentation and breach of express warranty claims are predicated on the same argument about the qualifier "may" in the Statements, the Court finds that Koehler has stated a claim for these two common law claims.

Therefore, the Court DENIES defendant's motion to dismiss all of plaintiff's claims based on

---

[2] *See, e.g.*, FAC ¶ 11 ("Plaintiff purchased the product believing it *would* help boost and enhance his immune system.") (emphasis added); FAC ¶ 15 ("the product does not *help enhance* the immune system or *boost* immunity") (emphasis added); FAC ¶ 36 ("the claims that the Product *enhances* the body's immune system and *boosts* immunity") (emphasis added); FAC ¶ 38 (reasonable consumers were led to believe that ingesting the Product *would result* in benefits to their immunity and ultimately to their health") (emphasis added); FAC ¶¶ 63, 79, 104, 115 ("Plaintiff and members of the class purchased the Product believing it *would* help boost and/or enhance their immune system") (emphasis added); FAC ¶ 107 ("misleadingly claim *to enhance* the immune system or *boost* immunity).

the qualifier "may" that precedes the Statements.

### B. Koehler's Standing to Pursue Claims Based on Other Advertisements

Koehler alleges that he purchased the Product based on the advertisements on the front and rear of the label. However, he also alleges that Litehouse advertises the Product "[t]horough a variety of advertising methods." FAC ¶ 27. Litehouse argues that Koehler can only bring claims based on the advertisements that he actually perceived and relied on (i.e., the Statements on the label), and cannot bring claims based on any other advertisements.

In support of its argument, Litehouse relies on *Johns v. Bayer Corp.*, 09CV1935DMSJMA, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010). In *Johns*, the district court dismissed the UCL and CLRA claim for a certain product because the plaintiff failed to allege that he saw *any* advertisements for the product or read the product packaging. *Id.* at *5. The court found that the plaintiff "cannot expand the scope of his claims to include a product he did not purchase or advertisements relating to a product that he did not rely upon." *Id.* However, *Johns* is not precisely on point because in that case the plaintiff did not rely on a single advertisement, while Koehler allegedly relied on the Statements on the Product's label.

In *Cardenas v. NBTY, Inc.*, the district court discussed the dicta in *Johns* and in other cases with similar holdings. 870 F. Supp. 2d 984, 2012 U.S. Dist. LEXIS 63376, at *17 (E.D. Cal. 2012). The court also found that "[o]ther recent court decisions, however, have applied a different approach when facing, in a class action, a named plaintiff's assertion of claims related to products that she did not buy." *Id.* at *18 (citing *Carideo v. Dell, Inc.*, 706 F.Supp.2d 1122, 1134 (W.D. Wash. 2010); *Hewlett–Packard v. Superior Ct.*, 167 Cal. App. 4th 87, 89-92 (2008); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 529-32 (C.D. Cal. 2011)). The court found persuasive that "'treatises and the vast majority of persuasive authority indicate that . . . the issue of whether a class representative may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.'" *Id.* at *19-20 (quoting *Bruno*, 280 F.R.D. at 530).

Similarly, this Court finds the reasoning articulated in *Bruno* and *Cardenas* more persuasive. Whether Koehler as a class representative can present claims on behalf of other class members who may

7

have relied on different advertisements than those on the product label is an issue of typicality and adequacy of representation more properly disputed at the class certification stage. This is very different from the issue of whether Koehler has standing to bring his own claims, which Litehouse does not even dispute. *Compare Lewis v. Casey*, 518 U.S. 343, 357 (1996) (holding that a representative plaintiff who was not personally injured did not have standing, even if other members of the class were injured).

Therefore, the Court declines to dismiss his claims regarding other forms of advertisement at this stage and DENIES defendant's motion to dismiss plaintiff's claims based on other advertisements.

### C. Koehler's Standing to Seek Injunctive Relief

Litehouse argues that Koehler does not have standing to seek injunctive relief because he cannot allege a threat of future injury. It points to Koehler's allegations that he stopped using the Product once he learned that the Statements were a misrepresentation, and he "does not intend to make another purchase of the Product, as it doesn't perform for the reason [he] purchased it." FAC ¶¶ 16, 41. Litehouse argues that because Koehler has averred that he will not purchase the product again, he has no standing to seek injunctive relief because there is no "'likelihood of future injury.'" Def.'s Mot. to Dismiss 17 (quoting *Hodgers-Durginv. De La Vina*, 199 F.3d 1037, 1039 (9th Cir. 1999)).

In *Henderson v. Gruma Corp.*, the plaintiffs brought similar claims under the UCL, FAL, and CLRA, and the defendant argued that the plaintiffs lacked Article III standing because they had averred that, now that they knew the truth about the product, they would no longer purchase it. 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011). The court in *Henderson* disagreed with the defendant's standing argument:

> If the Court were to construe Article III standing as narrowly as Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter . . . and would never have Article III standing . . . . While Plaintiffs may not purchase the same Gruma products as they purchased during the class period, because they are now aware of the true content of the products, to prevent them from bringing suit would surely thwart the objective of California's consumer protection laws.

*Id.* at *7-8; *accord Larsen v. Trader Joe's Co.*, C 11-05188 SI, 2012 WL 5458396, at *3-4 (N.D. Cal. June 14, 2012); *Cabral v. Supple*, LLC, EDCV 12-00085-MWF, 2012 WL 4343867, at *2 (C.D. Cal.

8

Sept. 19, 2012).

The Court agrees with *Henderson*. To do otherwise would eviscerate the intent of the California legislature in creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009) ("The purpose of such [injunctive] relief, in the context of a UCL action, is to protect California's consumers against unfair business practices by stopping such practices in their tracks."). Courts have followed a similar logic in other contexts. *See Fortyune v. American Multi-Cinema, Inc.*, No. CV 10-5551, 2002 WL 32985838, at *7 (C.D. Cal. Oct. 22, 2002) (Manella, J.) ("If this Court rules otherwise [and does not find standing], like defendants would always be able to avoid enforcement of the ADA. This court is reluctant to embrace a rule of standing that would allow an alleged wrongdoer to evade the court's jurisdiction so long as he does not injure the same person twice.").

Therefore, the Court DENIES defendant's motion to dismiss plaintiff's claims seeking injunctive relief.

### D. Koehler's Claims on Behalf of a Nationwide Class

Litehouse argues that Koehler cannot bring his California state law claims "on behalf of a class defined as all United States persons who have purchased the Product for personal use." FAC ¶ 48. It argues that these claims cannot be applied to a nationwide class because consumers who purchased the Product outside the forum state will not have sufficient contacts with the state of California. Def.'s Mot. to Dismiss 19.

For a forum state to apply its law constitutionally to the claims of nonresident class members, the forum "must have a significant contact or aggregation of contacts to the claims asserted by each member of the plaintiff class, contacts creating state interests, in order to ensure that the choice of [forum] law is not arbitrary or unfair." *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 612-13 (1987) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985) (internal citations omitted)). "California law embodies a presumption against the extraterritorial application of its statutes." *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000), *aff'd* 361 F.3d 566 (9th Cir. 2004). In regard to the UCL and CLRA, non-California residents' claims are not

9

supported "where none of the alleged misconduct or injuries occurred in California." *Id.* (citing *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999)); *Banks v. Nissan N. Am., Inc.*, 2012 U.S. Dist. LEXIS 37754, *3 (N.D. Cal. Mar. 20, 2012). This is because, "beyond California's presumption against the extraterritorial application of its laws, a California court's adjudication of non-residents' claims that lack a nexus with California raises significant due process problems." *Id.*

Plaintiff's UCL, FAL, and CLRA claims, purportedly brought as a nationwide class action, would necessarily include purchases outside of California made by non-California residents. These plaintiffs do not have the requisite contacts with California, and therefore violate the presumption against the extraterritorial application of California laws and raise significant due process issues.

Therefore, defendant's motion to dismiss plaintiff's class action allegations, to the extent asserted on behalf of a nationwide class, is GRANTED WITH LEAVE TO AMEND.

### E. Disgorgement Relief Under the UCL and FAL

Nonrestitutionary disgorgement is relief is not allowed under the UCL. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1147-49 (2003) ("[A]n individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest."); *see also Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008) ("[N]onrestitutionary disgorgement is akin to a damages remedy: relief that is not allowed under the UCL."). The restitutionary remedies of the UCL and FAL, sections 17203 and 17535, are identical and are construed in the same manner. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 177 n.10 (2000).

Here, plaintiff Koehler seeks disgorgement of "all ill-gotten gains," including those in which he has no ownership interest. FAC, Prayer for Relief ¶ 2(c). This request for relief includes nonrestitutionary disgorgement, which is prohibited under the UCL and FAL. Therefore, the Court GRANTS defendant's motion to dismiss plaintiff's request for the disgorgement of all ill-gotten gains, and allows plaintiff LEAVE TO AMEND his pleading to limit the disgorgement recovery to restitutionary purposes only.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion to strike. The Court GRANTS IN PART and DENIES IN PART defendant's motion to dismiss. This resolves docket nos. 24 and 25. **Any amended complaint must be filed no later than December 21, 2013.**

**IT IS SO ORDERED.**

Dated: December 13, 2012

SUSAN ILLSTON
United States District Judge